FRIEDMAN DUMAS & SPRINGWATER LLP
CECILY A. DUMAS (S.B. NO. 111449)
ROBERT E. CLARK (S.B. NO. 245882)
150 Spear Street, Suite 1600
San Francisco, CA 94105
Telephone Number: (415) 834-3800
Facsimile Number: (415) 834-1044

Attorneys for Plaintiff in Intervention R. Todd Neilson,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>CEDAR FUNDING, INC.,<br><br>Debtor. | Chapter 11 Case No. 08-52709 MM<br>(Consolidated with Case No. 08-53670 MM)<br><br>Chapter 11 |
| MELINDA MOORE, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CAPITAL ALLIANCE ADVISORS, INC., et al.,<br><br>Defendants. | A.P. No. 08-05309-MM<br><br>**OPPOSITION OF PLAINTIFF-IN-INTERVENTION R. TODD NEILSON TO MOTION FOR SUMMARY JUDGMENT AND FOR EXPUNGEMENT OF LIS PENDENS FILED BY DEFENDANT CAPITAL ALLIANCE INSTITUTIONAL MORTGAGE FUND, LLC**<br><br>Date: November 12, 2009<br>Time: 2:00 p.m.<br>Place: Courtroom 3070<br>280 South First Street<br>San Jose, California 95113<br>Judge: Hon. Marilyn Morgan |

Plaintiff-in-intervention R. Todd Neilson, the duly-appointed chapter 11 trustee ("Trustee") of the debtor Cedar Funding, Inc. ("Cedar Funding" or "Debtor") hereby submits his memorandum in opposition to the Motion for Summary Judgment and for Expungement of Lis Pendens ("Motion") filed by defendant Capital Alliance Institutional Mortgage Fund, LLC ("Defendant").

## I. ISSUE TO BE DECIDED

1. Is the testimony of Dennis Konczal that Defendant did not have actual knowledge of the fractionalized interests of Cedar Funding's investors in the Mercy Spring loan credible?

2. Can the Trustee step into the shoes of plaintiff Douglas Forzani in prosecuting the action?

## II. SUMMARY OF ARGUMENT

The Trustee's case is simple. Konczal found out in November 2005 that Cedar Funding was offering to sell Defendant notes that had already been fractionalized. The reason Cedar Funding wanted to sell Defendant notes was that Cedar Funding needed "free cash" to close new loans.

The existence of fractional investors was a problem for Konczal because Cedar Funding would not be able to sell Defendant the whole note. After obtaining this knowledge in November 2005, and despite the "problem" of which Konczal was aware, Defendant went on to buy six notes from Cedar. All six loans had already been sold to fractional investors, either in whole or in part, when Defendant purchased them. Mercy Springs was the third of the six notes Defendant purchased after November 2005.

So, the Court is faced with Konczal's declaration where he states that he had no knowledge that there were fractional investors on "this particular loan" and his inquiry duty under the circumstances was satisfied by his having pulled a preliminary report to see who was on title.

This testimony is simply not credible, under the circumstances of the close prior relationship between Defendant and Cedar Funding as shown by undisputed evidence.

A trial is required so that the Court may evaluate Konczal's credibility and the whole story can be told.

The Trustee's standing to being the claim is based on the equitable interest in the loan asserted by plaintiff Douglas Forzani, who purchased his interest in the Mercy Springs junior loan *before* Defendant acquired the first trust deed. Defendant claims that Forzani did not have an equitable interest in the Mercy Springs loan according to the Court's *Rollins* ruling, and therefore there is nothing for the Trustee to avoid and preserve for the benefit of the estate. The Court will have to address this issue, as that is the only basis on which Defendant may be entitled to summary judgment. Otherwise, this case should go to trial.

## III. STATEMENT OF RELEVANT FACTS

The evidence submitted by Defendant in support of its motion for summary judgment consists solely of a declaration of Dennis Konczal, the President and Chief Operating Officer of Capital Alliance Advisors, Inc., the Manager of Defendant. Konczal states:

- "At the time Defendant made the $3.2 million in advances under the Calliance note, neither I nor Defendant had any knowledge that any one other than the Debtor asserted an interest in the CFI Deed of Trust."
- "At the time Defendant made the advances to Mercy Springs, neither I nor Defendant had any knowledge that the Debtor was failing to record assignments of deeds of trust promptly as required by the Department of Real Estate and applicable law."
- "Neither I nor Defendant had any knowledge of plaintiffs' alleged investment in the CFI Deed of Trust prior to the commencement of this action."
- "Nothing I ever saw in any Cedar Funding files and nothing I ever learned from David Nilsen or any other source suggested that Cedar Funding had sold fractionalized interests in the CFI deed of trust to any investors."

Konczal Declaration, ¶¶ 15, 16.

But these statements are contradicted by reasonable inferences that may be drawn from undisputed facts, including the following:

- Konczal and Bill Aubrey were given free access to review any original Cedar Funding loan files they wished to see. *See* Declaration of Cecily A. Dumas ("Dumas Declaration"), Exhibit B at 60.

- Konczal and Aubrey reviewed between 50 – 75 original loan files at Cedar's premises. *See* Dumas Declaration, Exhibit A at 13–14; Exhibit B at 9–10.

- Konczal testified that Defendant never made a loan to which Cedar subordinated or bought a Cedar Funding note without having first reviewed the Cedar Funding loan file. *See* Dumas Declaration, Exhibit B at 76.

- Prior to extending the loan to Mercy Springs, Defendant had invested in at least six loans with Cedar – 175 Chaparral; 2556 Chicago St. (Bellamar condos); 1234 North First St.; 318 Pasadera; 5 Overlook Drive; and 34 Harvest Lane.[1] In three of these transactions, Defendant sold back a participation interest to Cedar Funding Mortgage Fund (the "Fund") – Chaparral, Bellamar condos and 1234 N. First St. In two of these transactions, Defendant and Cedar or Nilsen both had ownership interests in the borrower – Bellamar condos and 1234 North First St. Two loans were made on property owned by David and Angela Nilsen – 318 Pasadera. *See* Declaration of Scott D. McKinlay ("McKinlay Declaration") at ¶ 7.

- On November 3, 2005, Konczal received an Excel spreadsheet from Thomas Schellenberg containing the proposed format for the Cedar loan inventory for possible acquisition by Defendant. Konczal specifically asked that a column be added to the spreadsheet indicating the "current ownership" of the loan. <u>In emails exchanged that same day and the next, Schellenberg indicated: "In thinking about the issue with the fractionalized vs. the LLC loans, I think that something for us to consider is that the LLC could easily buy out any [sic] of the fractional interests thus rolling it into a single entity which would then facilitate a partial transaction more easily with Capital Alliance." Konczal responded: "Even if the LLC could buy out all of the fractional owners, I think we should know, with this first run, if a loan is 100% owned by the LLC or how many fractionals have ownership".</u> *See* Dumas Declaration, Exhibit B at 77–88 & Exhs. 13–15.

- The next Cedar Funding promissory note that Defendant purchased after the November 2005 exchange was 5 Overlook Drive, a loan that Cedar originated on February 19, 2004 to Michael Martin. The loan had already been sold to investors whose interests were not of record, a fact that was evident from the loan file. *See* McKinlay Declaration at ¶ 9.

- The next Cedar Funding note that Defendant purchased after 5 Overlook Drive was 34 Harvest Lane, a loan that Cedar originated on August 4, 2004 to Domras. The loan had already been sold to investors whose interests were not of record, a fact that was evident from the loan file. *See* McKinlay Declaration at ¶ 10.

---

[1] The Trustee is aware that Defendant funded other loans that were closed loans at the time of Cedar's bankruptcy filing. The Trustee's professionals are still trying to track down and account for all of the closed loans.

- The next Cedar Funding note that Defendant purchased after 34 Harvest Lane was the subject property – Mercy Springs. When Defendant made its loan, taking out the existing Cedar first trust deed, and obtaining the subordination of the second trust deed, the investors' unrecorded interests in the second trust deed were evident in the loan file that Defendant reviewed. *See* McKinlay Declaration at ¶ 8.

- Douglas Forzani's investment of $250,000 in the second trust deed on Mercy Springs was evident from the loan file that Defendant reviewed. *See* McKinlay Declaration at ¶ 8.

- When Defendant replaced the existing $2.0 million first trust deed on Mercy Springs with its own trust deed, it immediately advanced an additional $1.0 million, thereby increasing the loan secured by the first trust deed from $2.0 million to $3.0 million. *See* Dumas Declaration, Exhibit B at 44. The increase in the first loan was without the consent of Forzani and the other investors on the second trust deed. *See* ("Judd Declaration") at ¶ 7. The increase in the amount of the first prejudiced the investors in the second trust deed. The net proceeds of the $1.0 million loan went to Cedar and Nilsen, giving Nilsen the "free cash" he needed to fund new loans, and thereby serving the purpose of Cedar Funding's program to sell Defendant notes.

## IV. ARGUMENT

### A. Summary Judgment is Inappropriate Where the Credibility of Key Witnesses Is At Issue.

Summary judgment is inappropriate where there is a disputed genuine issue of material fact. "A genuine issue of material fact exists if, viewing all the evidence in the light most favorable to the nonmoving party, a reasonable fact-finder could decide in that party's favor." *In re Joye*, 578 F.3d 1070, 1074 (9th Cir. 2009).

A court must be particularly cautious before granting summary judgment when the moving party's case depends on the credibility of a key witness—especially when the issue is what the witness thought or knew at a given moment. *See SEC v. M & A West, Inc.*, 538 F.3d 1043, 1055 (9th Cir. 2008) ("[S]ummary judgment is singularly inappropriate where credibility is at issue.") (quoting *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978)); *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("[S]ummary judgment procedures should be used with care and restraint,. . . particularly when state of mind or extent of knowledge are at issue."). If the non-moving party offers evidence from which a reasonable fact-finder could find that the relevant

testimony is not credible, the court should not attempt to weigh the evidence or evaluate the credibility of the testimony, but should leave those determinations for trial. *See Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1124 (9th Cir. 2009) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whe[n] he is ruling on a motion for summary judgment. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### B. The Merit of Defendant's Motion Hinges on the Konczal Testimony That Defendant Had No Knowledge of the Unrecorded Investor Interests.

Defendant's motion for summary judgment ultimately hinges on its claim that it had no knowledge of any prior interest held by fractional investors in the subordinated Cedar Funding loan. This claim in turn rests on the credibility of Dennis Konczal, who declares that at the time of the subordination, "neither I nor Defendant had any knowledge that any one other than the Debtor asserted an interest in the CFI Deed of Trust."

The Trustee has submitted evidence from which a reasonable fact-finder could conclude that this claim of ignorance is not credible. In deciding which Cedar Funding– related properties to invest in, Konczal and Aubrey reviewed between 50 and 75 original Cedar Funding loan files. Konczal testified that Defendant never made a loan or bought a note without having first reviewed the loan file, and the record shows that Defendant invested in several properties which, Plaintiff has shown, contained unmistakable evidence of prior investment by fractional investors. In order to grant summary judgment, this Court would have to find that Konczal is credible when he says that neither he nor anyone else at Capital Alliance noticed the involvement of such investors in the subordinated $6.5 million loan to Mercy Springs. Based on the contents of the Mercy Springs loan file (and others that we know Defendant reviewed), a reasonable fact-finder could conclude otherwise.

Even apart from such inferences based on the loan-file contents (and such inferences should, of course, be made in favor of the Trustee for purposes of this motion), the Trustee has provided direct evidence contradicting Konczal's claim that "nothing I ever

learned from David Nilsen or any other source suggested that Cedar Funding had sold fractional interests in the CFI deed of trust to any investors." In early November 2005, at a moment when Cedar Funding was actively courting Capital Alliance's investment, Konczal and Thomas Schellenberg exchanged emails directly addressing Konczal's concern that some of the loans Cedar Funding was proposing to sell to Capital Alliance had already been sold in part to fractional investors. To deal with "the issue with the fractionalized vs. the LLC loans," Schellenberg proposed having the Cedar Funding Mortgage Fund buy out the fractional interests, so that the Fund would be the sold party with whom to arrange a reconveyance. Konczal insisted on knowing more: "Even if the [Fund] could buy out all of the fractional owners, I think we should know, with this first run, if a loan is 100% owned by the [Fund] or how many fractional investors have ownership."

Defendant is asking this Court to believe that, despite the heightened interest he had in November 2005 (which he expressed in no uncertain terms), by August 2006 Konczal had become completely indifferent to the existence of any fractional owners in the Mercy Springs loan, paying no attention to the abundant evidence of such investors in the Mercy Springs loan file, and disregarding any prior awareness he had of such investors in connection with the earlier-extended loans on 5 Overlook Drive and 34 Harvest Lane. If it is true that Konczal had become so indifferent, he has not explained why. His credibility on this point is seriously in question, and summary judgment based on his testimony is inappropriate.

### C. Defendant is Not a Bona Fide Holder of a First Trust Deed on the Property Because It Had Knowledge of Prior Equitable Interests in the Property.

Under California law, a conveyance of real property must "be recorded in order to be valid against a subsequent purchaser of the same property." *Kabayan v. Yepremian,* 190 B.R. 389, 394 (C.D. Cal. 1995), citing *In re Weisman*, 5 F.3d 417, 420 (9th Cir. 1993); Cal. Civ. Code § 1214. However, California Civil Code § 1217 provides that: "An unrecorded instrument is valid as between the parties thereto *and those who have notice thereof*." (Emphasis added.) The California Supreme Court held long ago that a mortgagee

who had actual notice of the execution and existence of an unrecorded note and mortgage held by a third party took subject to the unrecorded mortgage. *County Bank of San Luis Obispo v. Fox,* 119 Cal. 61, 63-64 (1897).

The subsequent purchaser or encumbrancer also takes subject to equitable interests of which it has notice. "The party claiming the equitable interest has the burden of proof to 'show due and sufficient notice to defendant of matters outside the record title tending to establish any resulting or constructive trust in plaintiff's favor.'" *Kabayan,* 190 B.R. at 395. "To be sufficient, the notice should be "precise and complete enough to put the <u>defendant upon his guard</u>." *Id.* at 395. (Emphasis added.) "Actual notice may also attach when a 'subsequent party is told of the prior interest, hears it discussed by others, [or] sees some document referring to the interest.'" *Ibid.*

In *Kabayan,* the plaintiff sought the imposition of a constructive trust on certain real property owned by a joint venture in which he held an interest, and a determination that his interest took priority over the lien of the bank which held a deed of trust on the property. Plaintiff made general allegations that the bank knew that the debtor lacked funds and that foreign investors usually have partners. *Id.* at 395-96. The court decided that it did not need to reach the question of whether plaintiff had established a constructive trust because it found that plaintiff had not met his burden of proving that the bank had notice, and accordingly entered summary judgment for the bank.

This case is factually distinguishable from *Kabayan* because Konczal received documents which showed him that Cedar Funding's loans were fractionalized. Because of having received these documents, <u>Konczal was on his guard</u>. He demanded to be informed of the ownership of the loans the Defendant was considering purchasing.

The reason why Konczal is not a credible witness is that he is now insisting that he *never knew* about Cedar's investors – a flat out lie. He is not telling the court that he heard that some of the loans were fractionalized, and as a consequence insisted that Defendant would only purchase loans that Nilsen proved were owned by Cedar Funding. No, despite his actual knowledge that the loans were fractionalized, he is saying that he

trusted Nilsen and therefore never asked the question. He just looked at the public record. This is a classic demonstration of looking the other way, or, as Plaintiffs so aptly pled in their complaint, willful blindness. Konczal is not credible; the motion must be denied.

### D. The Trustee Succeeds to Forzani's Avoidable Equitable Interest.

Defendant argues that the Court's ruling in *Rollins v. Neilson (In re Cedar Funding, Inc)*, 408 B.R. 299 (Bankr. N.D. Cal. 2009), precludes this action by either Douglas Forzani, the investor who admittedly invested in the $6.5 million Mercy Springs loan before Defendant extended its new first priority $3.0 million loan. Defendant's position is based on an incorrect interpretation of the *Rollins* decision. While the Court denied the plaintiffs' request for the imposition of an equitable lien, it did so based on the fact of the intervening bankruptcy case and the policy of ratable distribution.

Defendant cannot take advantage of the bankruptcy policy. If under applicable state law, Forzani would have been able to establish an equitable interest in the property, the interest is preserved for the benefit of the estate under Bankruptcy Code § 551 after the interest has been avoided.

## V. CONCLUSION

Based upon the foregoing memorandum and the evidence submitted in opposition to the motion for summary judgment, the Trustee respectfully requests that the motion be denied.

Dated: October 29, 2009    Respectfully submitted,

FRIEDMAN DUMAS & SPRINGWATER LLP

By: */s/ Cecily A. Dumas*
    Cecily A. Dumas
    Attorneys for Plaintiff in Intervention R. Todd
    Neilson, Chapter 11 Trustee